E-FILED IN OFFICE - JM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**22-C-00020-S3**
**2/15/2022 12:57 PM**
TIANA P. GARNER, CLERK

GWINNETT COUNTY STATE COURT

STATE OF GEORGIA

GARRETT SUTTON,                         \*
                                        \*
    Plaintiff,                      \*
                                        \*
v.                                           Case No.: 22-C-00020-S3
                                        \*
QUICK ACQUISITION, LLC                  \*
                                        \*
    Defendant.                      \*

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Garrett Sutton, through his undersigned counsel, sues Defendant QUICK ACQUISITION, LLC ("QUICK") and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x (the "FCRA").

### INTRODUCTION

1.      This is an action for actual damages, statutory damages, punitive damages, costs and attorneys' fees brought pursuant to the FCRA.

2.      Congress enacted the FCRA to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies and in doing so promoted the efficiency and public confidence in the consumer reporting system.

3.      The consumer reports the FCRA governs are used in a variety of contexts, including evaluating someone for employment. Those reports are commonly known as "background checks," and are governed by the FCRA just as commonplace credit reports are.

EXHIBIT G

4.    The Plaintiff in this case lost a job with All Restoration because a consumer report on Plaintiff by Defendant QUICK contained erroneous information about a supposedly pending drug charge that had been reduced and was no longer pending.

5.    All Restoration is a nationwide provider of cleaning and remediation services. It staffs those services with consumers like Plaintiff.

6.    As part of its hiring processes, All Restoration ("ARS") and its subsidiaries use background checks, such as the one created by QUICK in this matter, to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks.

7.    Providing a copy of the background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even if reports are accurate, the FCRA demands that applicants receive them and their written FCRA rights so that they may preemptively discuss negative information with the potential employers.

8.    Apart from accuracy provisions that have genuine teeth, another of the FCRA's primary goals is transparency. Consumers have the absolute right to learn all of the information—including sources of that information—CRAs possess

about them. 15 U.S.C. § 1681g. All a consumer need do is contact the CRA and ask for his or her file disclosure. *Id.*

9.      Plaintiff wrote to QUICK and requested his full consumer file, and QUICK did not respond. This is insufficient to meet the FCRA's requirements that CRAs provide all information, including sources of that information, in consumers' files.

10.     When QUICK completes a background check that includes criminal records, it compares those records to the hiring criteria ARS provides QUICK. Where QUICK's search results reveal criminal-history "hits" that disqualify someone from employment according to ARS' hiring criteria, QUICK flags those results.

11.     The flagging of results then becomes a hiring decision for ARS—the person cannot meet the hiring criteria, so the flagging is essentially the guarantee that the person is disqualified and will not be hired.

12.     And that is what happened with Plaintiff. QUICK's search results returned a heroin charge that QUICK believed was pending, and it flagged those records and communicated the flag in its report results to ARS. All Restoration then viewed the flag, understood it to mean that Plaintiff was disqualified from employment according to ARS' criteria, and communicated to Plaintiff by telephone that he would not be hired because of the supposedly pending charge.

13.     The FCRA imposes separate requirements on consumer reporting agencies ("CRAs") like QUICK generally and in the employment context.

14.   For any consumer report QUICK creates, the FCRA demands that it use reasonable procedures to ensure the maximum possible accuracy of the information it reports. 15 U.S.C. § 1681e(b). It failed here, as Plaintiff's report to ARS inaccurately reported a pending heroin charge that was neither pending nor a drug charge.

15.   When QUICK creates a consumer report for employment purposes, the FCRA requires that if it is reporting public-record information likely to adversely affect a consumer's ability to obtain employment, it must provide notice to the consumer "at the time" it provides the report to its client. Alternatively, the CRA must have in place strict procedures designed to ensure the information its report is complete and up to date. 15 U.S.C. § 1681k.

16.   QUICK failed on both scores with Plaintiff's report. Not only did it fail to provide Plaintiff contemporaneous notice that it was providing ARS with a report about him containing negative public-record information, QUICK failed to have in place strict procedures designed to ensure the information it was reporting was complete and up to date.

17.   Not only did QUICK fail to include the final correct charge that ended Plaintiff's case, it failed to report that the case was completed rather than pending, and that Plaintiff had completed his sentence of probation.

18.   Plaintiff pursues an individual FCRA claim against QUICK for its provision of the inaccurate report to ARS. The inaccuracies cost Plaintiff a job he

desperately needed, and QUICK's other failures prevented him from discussing the report's contents with ARS before it made its hiring decision.

19.    Plaintiff pursues nationwide Class claims against QUICK for its violations of Section 1681k of the FCRA, as it neither provided Plaintiff at-the-time notice it was reporting negative information about him or had in place strict procedures designed to ensure the information it was reporting was complete and up-to-date.

20.    Plaintiff brings nationwide class claims against QUICK for this additional failure. He seeks to represent a class alleging a violation of Section 1681g, because QUICK did not provide him with a copy of his full consumer file when he requested it.

## JURISDICTION, VENUE, AND PARTIES

21.    Personal jurisdiction exists over Defendant as QUICK has the necessary minimum contacts with the State of Georgia, this suit arises out of Defendants' specific conduct with Plaintiff in Georgia, and Plaintiff was injured in Georgia.

22.    Venue is appropriate in this Court as a substantial part of the events giving rise to Plaintiff's claims occurred in Gwinnett County.

23.    Plaintiff is a natural person, who at all times relevant resided in Snellville, Georgia.

24.    At all relevant times and cited herein, Plaintiff is a "person" as defined by 15 U.S.C. § 1681a(b).

25. At all relevant times and cited herein, Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

26. Defendant QUICK is a foreign limited liablity company organized under the laws of Texas. QUICK's registered agent is Corporate Creations Network, Inc. located at 5444 Westheimer Rd #1000, Houston, TX 77056. Upon information and belief, QUICK regularly conducts business in Georgia.

27. QUICK is a CRA as that term is used in 15 U.S.C. § 1681a(f).

28. QUICK prepares consumer reports and provides them to third parties for compensation. These consumer reports provide, among many other things, information about a consumer's character, general reputation, personal characteristics, or mode of living.

## FACTUAL ALLEGATIONS

**I.     Plaintiff's Application For Employment.**

29. In or around May of 2020, Plaintiff applied for a job with ARS.

30. Plaintiff was told that he would be given the job pending the outcome of a background check.

31. On May 12, 2020, Bev Chalmers, Business Operations Manager for ARS, emailed Plaintiff. Her emailed attached documents titled "2. FCRA Disclosure and Authorization – Sedgwick" and "3. Sedgwick Employment History Information Form."

32. Plaintiff signed and returned these forms on May 13, 2020.

33.     On May 21, 2020, ARS obtained a background check report on Plaintiff from QUICK.

34.     The background check report that QUICK provided stated that Plaintiff had pending felony charges for possession of heroin and that there was no next court date set.

35.     At the time of that report, Plaintiff's criminal history was a matter of public record.

36.     Although QUICK was providing ARS with public-record information likely to impact Plaintiff's job status as ARS, QUICK did not provide Plaintiff with contemporaneous notice that it was doing so. This was a violation of FCRA Section 1681k(a)(1).

37.     Plaintiff's charges were reduced to a misdemeanor and he was given probation, which, at the time of his application with ARS, he had already completed.

38.     Because the criminal-history information QUICK provided to ARS was not complete and up-to-date, QUICK cannot rely on the option provided by Section 1681k(a)(2) for compliance with Section 1681k.

39.     QUICK flagged these criminal records in its report to ARS, which was based on the comparison of QUICK's criminal-history-search results about Plaintiff to ARS's hiring criteria. When Plaintiff's supposed criminal history disqualified him from employment at ARS, QUICK flagged Plaintiff's report.

40.    ARS interprets QUICK's flagging of the report as a decision that the applicant is disqualified and ineligible for hiring at ARS. Thus, ARS takes no genuine role in the hiring decision once the report is returned with a flagged entry.

41.    QUICK's use of ARS's hiring criteria to flag or adjudicate reports is nothing unusual. CRAs have been engaging in that conduct in the employment context for many years, with each having a similar method of making hiring decisions for their employer-customers. *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 123 F. Supp. 3d 810 (E.D. Va. 2015).

42.    In enacting this notice provision in the FCRA, Congress envisioned a system that would allow applicants with the ability to discuss or, as in the case of Plaintiff, dispute inaccurate information before hiring decisions are made.

43.    ARS's use of QUICK to make its hiring decisions by comparing ARS's hiring criteria to report results and then declining to hire applicants based on the flagging of reports frustrates that system.

44.    Rather than provide Plaintiff with a copy of the QUICK report and the anticipated ability to discuss or dispute inaccurate information in the report before it made its hiring decision, ARS accepted the flagged grade as a decision that Plaintiff was ineligible for employment and called Plaintiff on the phone to break the news to him.

45.    ARS did not provide Plaintiff with a copy of the QUICK report or written summary of his FCRA rights before calling him and telling him it would not employ him.

46.     Plaintiff received his report some time later, but by then it was too late to dispute the inaccuracies because ARS had already told him he would not be hired.

47.     After he reviewed the report, Plaintiff wrote to QUICK and asked for his full consumer file, otherwise known as a "file disclosure," which the FCRA demands contain all information QUICK possesses about him. 15 U.S.C. § 1681g. QUICK did not respond to that request, a facial violation of Section 1681g.

48.     Plaintiff was denied employment with ARS due to QUICK's outdated and blatantly false records.

49.     Plaintiff's damages are continuing.

II.     **Defendants' Practices and Policies.**

A.      **QUICK's Uniform Failures To Meet The FCRA's Requirements.**

50.     QUICK has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it and its subsidiaries and vendors operate. Those policies, procedures, and practices cover the provision of "background checks" or "consumer reports" to customers like ARS to use in the employment context.

51.     QUICK routinely provides consumer reports to customers for use in screening applicants or employees.

52.     QUICK also routinely fails to provide applicants with at-the-time notice when it furnishers a report to a customer that contains public-record

information likely to adversely affect that consumer's ability to obtain employment.

53.    QUICK therefore violates Section 1681k(a)(1) with every report it issues for employment purposes that contains negative public-record information.

54.    QUICK does not "maintain strict procedures designed to ensure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date," so it cannot rely on this option for complying with Section 1681k(a).

55.    As a matter of course, QUICK uses the same business process for providing reports to customers without complying with Section 1681k as it did with Plaintiff and members of the Class described below.

56.    QUICK also fails to provide consumers with all of the information in their files upon consumers' request. Instead, QUICK ignores those requests because it saves money. Such does not meet the requirements of Section 1681g, meaning QUICK violates that section of the Act with every consumer disclosure it receives and ignores.

57.    QUICK follows the same inadequate means for providing consumer disclosures to consumers nationally as it did with Plaintiff and members of the Class described below. QUICK routinely fails to respond to every consumer who requests his or her file disclosure.

58.    As a result of these FCRA violations, QUICK is liable to Plaintiff, and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15

U.S.C. § 1681n(a)(1)(A) for each violation of Section 1681k, plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

59.   QUICK's conduct and omissions were willful. Because the FCRA was enacted in 1970, QUICK has had years to become compliant but has failed to do so.

60.   QUICK, a nationwide CRA, was aware of obligations under the FCRA as they relate to employment because it operates under that law every day by the nature of its business.  QUICK is a large corporation with in-house counsel and regularly engages outside counsel, meaning it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. QUICK therefore knew of the requirements imposed upon it by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

61.   QUICK has created and implemented national, reporting policies, procedures, and practices under which it operates. Those policies, procedures, and practices cover the creation and sale of "background checks" or "consumer reports" to employers like ARS.

62.   Defendant QUICK's policies and procedures flaunt the FCRA's employment-purpose provisions with every report it issues. As shown by Plaintiff's experience, QUICK provides reports to employers as a key aspect of its business, yet fails on even the most easy-to-follow FCRA requirements like the provision of contemporaneous notice where required.

63. QUICK likewise fails to meet the FCRA's accuracy provisions as a matter of course, as its procedures were unable to, for example, find the most-recent information relating to Plaintiff's criminal history.

64. QUICK has no strict procedures in place designed to ensure the public-record information it reports in the employment context is complete and up-to-date. As Plaintiff's case again demonstrates, QUICK reported to ARS that Plaintiff had pending criminal charges, and that they were more severe than the then-completed charges actually were. Had QUICK reported information that was complete and up-to-date, it would have shown a lesser charge, with a final, completed disposition through Plaintiff's compliance with the terms of his probation.

65. QUICK will therefore be unable to rely on the strict procedures aspect of Section 1681k(a) for meeting the requirements of that portion of the FCRA.

66. Likewise, as Plaintiff's case again demonstrates, QUICK has no process in place to provide at-the-time notice when it reports derogatory information for employment purposes.

67. And, separately, QUICK did not have in place reasonable procedures designed to assure the maximum possible accuracy of the information it reported to ARS.

68. When it provided Plaintiff's report to ARS, QUICK failed in its obligation to provide Plaintiff with at-the-time notice.

69.   None of this is by accident. The FCRA's notice requirements are simple and easy to follow. But since they cost money for CRAs to follow them, QUICK has chosen the more profit-friendly option of doing nothing or the bare minimum.

70.   QUICK has created uniform, consistently applied processes to utterly avoid all of these FCRA-imposed obligations.

71.   QUICK's conduct and omissions were willful. Because the FCRA was enacted in 1970, QUICK has had years to become compliant but has failed to do so.

72.   And because QUICK is a CRA and operates under the FCRA's umbrella every day, discovery will show it is aware of the FCRA's obligations and ignore them.

73.   QUICK, operating as a nationwide CRA, is aware of its FCRA obligations because it markets itself to employers like ARS as an invaluable part of their hiring processes. QUICK possess the know-how and resources to learn of the legal obligations for background reporting agencies.

74.   QUICK has access to in-house and outside counsel, meaning it has ample means and opportunity to seek legal advice regarding its FCRA responsibilities. QUICK therefore knew of the requirements imposed by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

## LEGAL REQUIREMENTS

**A.    The Provisions Applicable To CRAs Like QUICK.**

*Maximum Possible Accuracy for Consumer Reporting Agencies*

75.    The FCRA imposes on CRAs the requirement that, for every report they create, the employ reasonable procedures designed to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

76.    Such duty accompanies any report governed by the FCRA and evinces Congress's intent that CRAs carefully carry-out their businesses such that their reports are as correct as possible.

77.    This accuracy provision applies in every context in which consumer reports are exchanged, meaning it is not limited to solely reports that are issued for employment purposes like some of the other provisions at issue here.

78.    QUICK fell short of those duties, as its procedures unreasonably failed to parse the information it possessed to ensure that it reported records attributable to Plaintiff as accurately as possible.

79.    Discovery will show, for example, that original court records contained the correct disposition of Plaintiff's case, that the case ended with a different crime than the one with which Plaintiff was charged, and that the case was no longer pending, yet QUICK instead relied on incomplete criminal records obtained from an unknown third party.

80.    Had QUICK consulted the original court records, it could have included complete and accurate information in the report about Plaintiff.

81.     The failures of QUICK on at least these two points show its procedures for compiling the records and reporting them to ARS were unreasonable and error-prone.

82.     Discovery will show QUICK adopted these inadequate procedures solely for profits' sake, and it is more costly to obtain original court records than to buy them in bulk. QUICK prefers the error-prone methods it uses because they are cheaper and allow for greater profit per report.

### The Notice Requirement in the Employment Context for Consumer Reporting Agencies

83.     15 U.S.C. § 1681k(a) requires CRAs like QUICK to provide timely and lawful notice that they are furnishing an employment purposed consumer report that contains derogatory information at the time it did so.

84.     This important requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the consumer-reporting agency to obtain and, as appropriate, correct information in the furnished report. It also was intended to alert the consumer to the employer's use of the report to provide consumers the opportunity to address any concerns or derogatory history in the report directly with the employer.

85.     Though QUICK created and provided the report about Plaintiff to ARS, and that report contained numerous entries of negative criminal history that

would likely adversely affect Plaintiff's ability to be employed by ARS, Plaintiff never received any notice from QUICK that it was furnishing such report.

86.    Plaintiff alleges that QUICK did not attempt to follow the option available at 15 U.S.C. § 1681k(a)(2) for any consumer. The alternative would only be applicable if QUICK had in place before any report was furnished strict procedures designed to ensure that it actually contacted the original source of public records information (*e.g.*, the Court clerk or the DMV) before furnishing a report which includes such information to insure that the information it included in its reports was the complete and up-to-date public record. A Section 1681k(a)(2) option is not available to QUICK because the public records they furnish to third parties are summaries, indexes, or partial records. QUICK never furnished the complete and up-to-date public record as Section 1681k(a)(2) envisions. That Section is thus inapplicable to the consumer reports at issue in this case.

### The FCRA's Transparency Requirements for Consumer Reporting Agencies

87.    Chief among the FCRA's broad protections are those that permit consumers to learn the information CRAs traffic about them.

88.    The Act therefore requires CRAs to provide, at consumers' request, all information in the consumer's file at the time of the request, including sources of that information, that CRAs possess about the requesting consumer. 15 U.S.C. § 1681g(a). This information is commonly called the consumer's "full file disclosure."

89.    It is of course insufficient to simply ignore such requests. *See id.*

90. Notably, there is nothing in the statute that permits a CRA to avoid this duty of full disclosure.

91. Such a provision was enacted for precisely situations like Plaintiff's. QUICK obtained inaccurate information about him and provided that information to a potential employer. For Plaintiff to correct those inaccuracies, he has to know the sources involved so he can contact them and have their records revised. If he does not know all the players who had a hand in furnishing information that went into his report, he cannot be certain that he has prevented the inaccuracies from resurfacing on the next report the Defendant, or someone else, creates about him.

92. When Plaintiff contacted QUICK and requested his full file disclosure, QUICK ignored him. Plaintiff therefore cannot know where the information QUICK received and was reported to ARS actually came from.

93. While QUICK will likely claim that the report to ARS does contain the sources of information, courts for example, it is widely known that CRAs buy bulk criminal-history information from third parties who are not courts.

94. Without knowing who these third-party vendors are, Plaintiff and other consumers are powerless to correct inaccurate information CRAs may possess and pass-on to others like ARS.

### DEFENDANT ACTED WILLFULLY

95. QUICK knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer

Financial Protection Bureau. QUICK obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

96.    QUICK's willful conduct is further reflected by, among other things, the following facts:

a.    QUICK provided no notice to Plaintiff that it was providing to ARS a consumer report that contained negative criminal history at the time it did so (or at all, for that matter). This failure was either knowing or reckless;

b.    QUICK does not have in place reasonable procedures designed to assure the maximum possible accuracy of information it reports. As with Plaintiff, a reasonable procedure would have accounted for the completed offense in Plaintiff's criminal history, and that the case was no longer pending at the time of the report;

c.    The FCRA was enacted in 1970, giving QUICK 50 years to become compliant;

d.    QUICK is a company with access to legal advice through its own general counsel's office and/or outside litigation counsel. Yet, there is no contemporaneous evidence that QUICK determined that this conduct was lawful;

e.    QUICK knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

f.    QUICK voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

g.    QUICK's violations of the FCRA were repeated and systematic, and they were carried out not by accident or oversight, but exactly as QUICK intended.

97.    As a result of these FCRA violations, QUICK is liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15

U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

98.     For Plaintiff's individual claims, QUICK is liable for Plaintiff's actual damages pursuant to 15 U.S.C. § 1681o, plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

## CLASS ACTION ALLEGATIONS

### 1681k NOTICE CLASS – QUICK'S VIOLATION OF THE FCRA, § 1681k(a)

99.     Plaintiff brings this action for himself and on behalf of the following putative class (the "1681k Notice Class"), of which he is a member:

> **All consumers in the United States (1) for whom QUICK created consumer reports for employment purposes, (2) which reports contained public-record information likely to have an adverse effect on those individuals' employment prospects, and (3) to whom QUICK did not provide to those consumers contemporaneous notice that it was providing such reports.**

### FILE DISCLOSURE CLASS – VIOLATION OF THE FCRA, § 1681g

100.   Plaintiff brings this action for himself and on behalf of the following putative class (the "File Disclosure Class"), of which he is a member:

> **All consumers in the United States who requested their consumer file disclosures from QUICK within the period five years before the filing of this lawsuit through the date on which the Court certifies a class in this action.**

101.   **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. Based on information and belief, the Classes are comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by Defendant, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

102.   **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Defendant's uniform conduct and procedures; whether Defendant provided the required notices and disclosures; when they did so, if at all; and, whether Defendants acted willfully in their failure to design and implement procedures to assure compliance with the FCRA provisions at issue. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Classes.

103.   **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendant used common practices and automated systems in committing the conduct that Plaintiff alleges damaged him and the Classes. Plaintiff seeks only statutory and punitive damages for his classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Classes. Defendant uniformly breached the FCRA by

engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

104. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained Counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country, including repeatedly in this District and Division.

105. **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the class wide wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

106. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendan's conduct. By contrast, the class action device will result in

substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

107.   There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Because Class Members in each Class that Plaintiff seeks to represent may be unaware that their rights have been violated or, if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding available.  To Plaintiff's knowledge, no other similar actions are pending against Defendant. This forum is appropriate for litigation because Defendant conducts business in this District and the conduct complained-of herein occurred here.

## CLAIMS FOR RELIEF

### COUNT ONE: QUICK'S VIOLATIONS OF 15 U.S.C. § 1681k
### Class Claim

108.   Plaintiff re-alleges and reincorporate paragraphs 1 through 156 above as though fully set forth herein.

109.   QUICK failed to send the required § 1681k(a)(1) notice to Plaintiff and each member of the 1681k Notice Class at the time that it provided an employment-purposed consumer report to  a user that contained public record information of the type that is likely to have an adverse effect on a consumer's ability to obtain or maintain employment.

110.   QUICK does not ever maintain strict procedures designed to ensure that it only furnishes complete and up-to-date public records. In fact, they uniformly fail to sell or furnish the complete public record and instead only obtain and provide the very limited data available through a batch and/or automated pickup of public records.

111.   QUICK's failure to timely provide the required FCRA notices to Plaintiff and the putative 1681k Notice Class members violated 15 U.S.C. § 1681k(a)(1).

112.   QUICK's similar failure to maintain strict procedures designed to ensure that it did not furnish incomplete or out of date public records regarding Plaintiff and the putative class members violated 15 U.S.C. § 1681k(a)(2).

113.   The conduct, action, and inaction of QUICK were willful, rendering QUICK liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

114.   As a result of QUICK's conduct, Plaintiff and the putative class have suffered particularized and concrete injuries, including being robbed of their congressionally mandated right to information to which Congress has deemed them entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parts with whom Plaintiff has no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiff is applying to employment or credit without Plaintiff having the

opportunity to view it in advance, and (4) it is potential determinative information in extremely important interactions—applications for employment or credit.

115.    Having been denied this important information, Plaintiff and the putative class were harmed because they did not know what information was circulated about them and by whom and were subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiff was at increased risk to be denied employment.

116.    Plaintiff and other members of the 1681k Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

117.    As a result of these FCRA violations, QUICK is liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

118.    As a result of QUICK's forgoing actions Plaintiff suffered concrete economic injuries when he lost a job opportunity and income.

### COUNT TWO: QUICK'S VIOLATION OF 15 U.S.C. § 1681g
### <u>Class Claim</u>

119.    Plaintiff re-alleges and reincorporate paragraphs 1 through 156 above as though fully set forth herein.

120.    QUICK's failure to provide Plaintiff s with his full consumer file upon request violated 15 U.S.C. § 1681g(a).

121.   QUICK failed to produce the information it possessed, despite Plaintiff's valid request for a copy of his file pursuant to § 1681g(a).

122.   The conduct, action, and inaction of QUICK were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. QUICK acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681g.

123.   As a result of QUICK's conduct, Plaintiff has suffered particularized and concrete injuries, including being robbed of his congressionally mandated right to information to which Congress has deemed him entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parties with who Plaintiff has no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiff is applying for employment or credit without Plaintiff having the opportunity to view it in advance, (4) it is potentially determinative information in extremely important interactions—applications for employment or credit, and (5) QUICK should include a notice of consumers' substantive rights under applicable federal law.

124.   Having been denied this important information, Plaintiff was harmed because he did not know what information was circulated about him and was subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiff was denied employment.

125.   QUICK knew or should have known of its legal obligations under the FCRA. These obligations are well-established in the plain language of the statute

and published circuit court authority. QUICK obtained or otherwise had available substantial written materials that apprised QUICK of its duties under the FCRA. Any reasonable CRA knows of the existence of these FCRA mandates, or can easily discover their substance.

126.   Moreover, at the time QUICK failed to follow 15 U.S.C. § 1681g, a plethora of FTC opinions and case law advising how QUICK should conduct itself existed.

127.   Plaintiff is entitled to recover costs and attorneys' fees as well as appropriate equitable relief from QUICK in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

128.   As a result of these FCRA violations, QUICK is liable to Plaintiff for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

**COUNT THREE: QUICK'S VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**Individual Claim**

129.   Plaintiff re-alleges and reincorporate paragraphs 1 through 156 above as though fully set forth herein.

130.   QUICK violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report it published and the consumer file it

maintained regarding Plaintiff by erroneously listing a charge as pending and more serious than the completed charge actually was.

131.   As a result of QUICK's conduct, Plaintiff suffered actual damages such as lost wages, frustration, stress, mental distress, loss of sleep, and lost time attempting to correct the inaccuracies.

132.   QUICK's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, QUICK was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

133.   Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from QUICK in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

a) That an order be entered certifying the proposed Classes under Section 9-11-23 of the Georgia Code of Civil Procedure and appointing Plaintiff and his Counsel to represent the Classes;

b) That judgment be entered for the proposed Classes against Defendants for statutory damages and punitive damages for violations of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681n;

c) That the Court award Plaintiff his actual damages for QUICKes furnishing of an inaccurate consumer report about Plaintiff that

resulted from the failure to use reasonable procedures to ensure the maximum possible accuracy of the information in the report;

d) That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

e) That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief, that may be permitted.

**<u>A TRIAL BY JURY IS DEMANDED.</u>**

**<u>/s/ Octavio "Tav" Gomez</u>**
Octavio "Tav" Gomez
Georgia Bar No.: 617963
The Consumer Lawyers
3210 W. Cypress St.
Tampa, Florida 33607
Telephone: (813) 299-8537
Facsimile: (844) 951-3933
Primary Email: tav@theconsumerlawyers.com
Secondary: jason@theconsumerlawyers.com
*Attorney for Plaintiff*